Colorado Navarro v. McHenry v. Blessinger Good to have you with us. Thank you, Your Honor. Go ahead. Thank you, Your Honor, and may it please the Court. Good morning. We ask that you vacate the Board's decision in this case for one of three reasons. First, the Board erred in finding that my client waived the right to call Dr. Montgomery as an expert witness when he won the case before oral testimony was taken. Second, the Board committed legal error when it failed to fully assess the record in determining that it is not more likely than not my client will be tortured upon return to El Salvador. And third, the Board abused its discretion in overturning the immigration judge's credibility finding. Unless this Court prefers otherwise, I'll address these issues in that order. With regard to Dr. Montgomery, Dr. Montgomery was recognized as an expert. Dr. Montgomery was the proposed expert. That is correct, Your Honor, yes. And Dr. Montgomery, the page six of the Respondent's Brief in this case does correctly state that the Department objected to the weight of Dr. Montgomery's testimony rather than her expertise at the trial level. On page 200 and . . . Why do you say that? How did they object? Dr. Montgomery didn't testify. That's correct. So how would they have objected to any of that until she testifies? I mean, they objected, but she wasn't on the list. I get that. But when she didn't testify, why do we think that? They indicated that her testimony should be given with limited weight, but actually in the Department's own brief before the Board of Immigration Appeals, they do call her an expert in there. And they . . . They called her an expert? They do. In the footnote, in the actual body of the brief, they do say purported expert, but in the footnote where they stated that they were contesting her expertise, they do call her an expert in the beginning of that footnote. And you take that to be a concession? So like if somebody offers somebody as an expert, right, we naturally refer to them as an expert. But they're not an expert until the court qualifies them as such. Sure. You calling them or the government calling them something doesn't make them an expert for our purposes until a court rules that they're an expert. I agree with that, Your Honor. I mean, the court did refer to her as an expert.  I'm sorry? They never got to her. She was . . . That's correct. The immigration judge . . . Were you at the proceedings? I was, Your Honor. I was the trial counsel in that case. Okay. And so the immigration court on . . . When you waived the right to, they say, to call her. Well, Your Honor, I think that's not necessarily correct. So that is what the Board is saying, is that we waived the right to call her. The IJ said she was going to agree with you. That's correct, yes. So the immigration . . . And then you said, well, I don't need her. That's correct, Your Honor, because the immigration judge was going to agree with us. The adjudicator found that we had met our burden and that we did not need to present additional evidence for a grant of deferral of removal. But we've all been trial lawyers and know that's like the tactical call that you have to make, right? And right or wrong probably is the right call, right? But sometimes, even if you can win in the trial court, you recognize you need to put on other evidence to, you know, prevail on appeal. Like that's the tactical judgment, and that which I totally respect, you know, probably was the right call at the time from a counsel perspective. But it's still a tactical judgment to not put that witness on. You could have said to the court, to the IJ, excuse me, thank you, Your Honor, I appreciate that we're going to prevail, but we really feel like we need to put this evidence in so that the BIA has the benefit of that evidence when it's reviewing your wise judgment to grant my client relief. That was an option available to you. Well, if I were to take on that option, as Your Honor refers to it. But the court actually, I thought she said she would give you a continuance and let you call the witness later, and another would reconvene. So the immigration. And terminate the hearing. The immigration. But was willing to reconvene it to hear your witness. So the immigration judge did indicate off the record that we could continue the matter and call Dr. Montgomery as a witness, but that the immigration judge was satisfied we had met the burden and was ready to enter a grant of deferral removal. Didn't that say that was off the record? It was off the record, but he. If it's off the record, how can we consider it? He summarized it back on the record. He summarized it back on the record, so it's in the record. Yes, I apologize, Your Honor. It's in the record. Yes, it is in the record. I'm getting concerned because when you talk about the record here, you know, we're talking about whether she was an expert or not, but her declaration, you say, is in the record. That is correct. Yes, Your Honor. And if the declaration's in the record, the record's the record. Yes, Your Honor. So you're arguing that it had to be considered as non-expert testimony? Or what's the effect of the testimony of Dr. Montgomery that's in the record? So if I may . . . I mean, it says what her qualifications are, and it says what her opinions are. Is that right? That is yes, Your Honor. So if her opinions were before the IJA and the BIA, what are they considered as lay testimony? I think they could be also considered as lay testimony. But it's in the record here. It is in the record. And it's before us. But there . . . It's in the record as a disclosure, right? When an expert provides a disclosure, but then the expert has to actually testify, be subject to cross-examination for it to be evidence. Well, I think that it's the weight of the evidence that's really considered when you're cross-examining a witness. That's what I think it is. I think it's the weight of the evidence. I think if it's put in the record, it's the record. Yes. So your view is, is that any . . . if a petitioner puts a disclosure, an expert disclosure in and chooses not to call that witness, what is the support for the cases or CFRs or whatever that the IJA has to consider the pre-hearing report that's submitted when you choose not to call that witness? So I think that . . . I don't know the information off the top of my head, the case, but I can submit a 28-J letter later if Your Honor would like. However, I do point the court to the courts . . . But your position is there's a case that says when the petitioner chooses not to call an expert witness, the IJA must consider the purported expert's statement that was submitted pre-hearing. The IJA must consider it? Well, Your Honor, not must, but in this case, the immigration judge did admit it into evidence and did accept it as evidence. Now, the board's decision itself does say that they were going to give Dr. Montgomery's report limited weight, not as much weight, but they did not exclude her report from the evidence at no point. And so I do think that's important. I do want to return to Judge Richardson's question about whether it was a tactical decision or to call my client . . . or to call Dr. Montgomery as a witness. And in this case . . . You're saying it was not a tactical decision? I think to one point it may have been. However, if we were to adopt the government's . . . Well, that should be looked at at the time it was made. Right. And that was a tactical decision because you knew you were going to win, so you abandoned the right . . . the opportunity to call your witness, and you won at that point. Now, if they later want to claim that you . . . that was ineffective counsel in that decision, that would be for some case down the road, not for this one. What I think is important to note here is that if I were to . . . if we were to adopt the reasoning . . . We get that stuff in habeas corpus cases where lawyers have to make decisions during the night. And . . . So, I . . . I recognize that. . . . and bring a second guest down the road. I'll concede that it was a tactical decision there, but I think what's important . . . A tactical decision, if it is a tactical decision, that's part of facts and law. Right. But what's important here to note is if we were to adopt the government's reasoning that my client waived the right to call Dr. Montgomery as a witness, we in essence would be taking the power from the immigration judge and giving it to the Department of Homeland Security and continue calling witnesses until the department, rather than the adjudicator, is satisfied that my client has met the burden in the case. And in this case . . . I'm sorry. I don't understand that statement at all, right? Sure. In any trial proceedings, right, lawyers got to make choices about what they're offering or not offering. Sure. But it's not giving power to the other side. It's your choice. And so the I.J. says, listen, this happens in, you know, district court all the time, counsel, I'm inclined to rule for you, but if you've got something you want to add, let me know. Right? And lawyers, smart lawyers at least, know to sit down at that point because they want to win at that stage. Now they recognize, at least the good ones do, that that creates some concern on appeal. But that doesn't transfer the power to the other side. Well, I think in that case, if the court were to find that Dr. Montgomery's testimony were needed to grant deferral removal in this case, the court, I'm saying the board. The board. I apologize. So if the board were to find it . . . If they wanted to go forward . . . if the court's satisfied you got enough but we want something else, judge, I want to bounce the record, make it more complete, or somebody else might take a look at this down the road. Belt and suspenders. But I think if that were the case, then the proper remedy would have been to remand this matter to the immigration court for consideration of that. Well, you've got a dissent at the board level that says exactly that. Yes. That's correct. You've got a dissenting judge. You call them judges? Yes. Immigrants. Yes. They're members of the board. They're board members. Whatever they want. You've got one dissent. Yes, that's correct. Out of the three? Yes. Just like this. They've said it ought to go back and consider the expert testimony. Yes. And I do believe that we should adopt the reasoning in Osmani and follow that a remand is required of the immigration court. So, is your position here come down to the fact that you say that the dissenting judge got it right and we ought to adhere to that? In one instance, yes.  But I'd like to move on to the protection under the Convention Against Torture as well if I may. You wouldn't be satisfied just with that? I wouldn't because I do believe my client has, on the record, I believe he met his burden. I believe the board, while they called it clear error standard, they didn't implement that. And if we actually look to the citations that the board made, almost every citation the board made supports my client's case. In this matter, I went through the 2,000-page record and I picked out the best three pages of evidence. And I point the court's reference to JA 1241, JA 1252, and JA 1478. Both 1241 and 1252 were cited by the board in its decision. And both of them demonstrate that it is more likely than not that individuals similarly situated to my client are to be tortured in detention centers in El Salvador. That's right standard, isn't it? I'm sorry? Is that the right standard? That it is more likely than not? More likely than not? Yes. That is the correct standard in the immigration court level. With the clear... That comes from the statute? That's in the statute? Yes, Your Honor. More likely than not? Yes, Your Honor. What's the difference between that and preponderance of the evidence? I mean, I think more likely than not is 51%. More likely than not is a 51% chance that someone would be tortured if they were to return to their home country. Is the preponderance not 51%? I believe it is, Your Honor. But I'm not positive. I don't... Are you saying they're the same thing? I can't opine to that. I can just speak to what is more likely than not standard. But I think what's important here... I used Frax Law. I never was in immigration proceedings, but we had a lot of civil proceedings.  And the standards were preponderance of the evidence. And lawyers used to argue about 51%. 51%. Yes, Your Honor. And so I draw the court's attention on JA 1478 to the Salvadoran government's own words, where the director of social fabric for the Salvadoran government, quote, called the treatment of those arrested during the state of exception, torture, end quote. I mean, that is what is in essence happening here. And that is what the immigration judge found based on the record before him. And that should have been what the... Can you explain to me how this argument connects back to his credibility? Yes. If we just hypothetically, for purposes of this question, accept that the BIA got it correct and your client was wholly uncredible, I understand that you have an argument that that's wrong. But just for a minute, accept that premise. What effect does that have on this argument? Because he now lacks evidence. So in theory, he's as likely to be a gang member as not to be a gang member. He has multiple murders, right? So the facts, you know, if you take his testimony out, look quite different. Is there any suggestion that if he's incredible, that he's done anything to establish what he has to under cap? Yes, Your Honor. So even if you're... So how do we know that if he's incredible, how do we know that he fits in the proposed social class that he's identified? Sure. The way that we know that is from the undisputed fact that my client has warrants for his arrest in El Salvador, the undisputed fact that my client will go to a prison in El Salvador upon return to El Salvador, and the undisputed facts within the record that demonstrate that individuals in detention centers in El Salvador are routinely being tortured by Salvadoran officials. So your theory here is that it matters not whether he continues to be an active member of a gang or not. That makes no difference. I don't believe it makes a difference, Your Honor. And so when he identified the social group, is the social group that he suggested to us, is it one that includes gang members and non-gang members? Well, in this case, it's protection under the Convention Against Torture, so there is no social group. But when the immigration judge was doing his analysis, he looked at whether or not suspected gang members, such as Mr. Colorado, would be tortured by members of the Salvadoran government. And that was the clear erroneous standard that the board erred on in overturning that, because the evidence shows that suspected gang members in prisons in El Salvador are routinely being tortured by the Salvadoran officials. The second group that the immigration judge found my client would be at risk of is from the 18th Street gang members, which, if he were a member of MS-13 or if he were not a member of MS-13, wouldn't matter, because he would have been a member of a rival gang. And as a member of a rival gang, it is more likely than not he would be tortured by those rival gang members, the 18th Street gang. And this is because he killed three of their members? Not just that, but it's also because he was a member of a rival gang, and the evidence supports proof of that. The citations given by the board in their decision actually talks about the fact that previously MS-13 and 18th Street gang members were separated, but now they're being put together. The board says that they're being put together because they want to break up the lines of communication, whereas the evidence that the board cites to you actually shows that they were previously separated because of the, uh, the risk of harm between the two gangs inside the detention centers that the Salvadoran government allows to occur. Ms. Blessinger, I've got a question. Um, if this, uh, man were given deferral of removal, what would happen to him? If he were given deferral? He's a self-confessed triple murderer, okay? So, so what would happen to him then if we were to agree with you? What would be the next step if he's granted deferral of removal? If he were granted deferral of removal, then, uh, he would have an order saying that he is not allowed to be deported to El Salvador, but then the Department of Homeland Security could opt to remove him to a safe third country in their eyes. And if it were a country... They would have to take a confessed triple murderer, who is, at least on the record we have, likely a gang member. They would have to get a country to agree to that, right? That is correct. We would like, you know, Belgium says, we would love to have a confessed triple murderer gang member. Will you send them to us? I mean, that is what would happen, but that's not really the, the, um, emphasis in this case, because the emphasis here should be whether or not... No, no, I just was trying to understand, to your question, and if that doesn't happen, to Judge Kenyon's question, if that doesn't happen, so if other countries say, we prefer not to have a confessed triple murderer be sent to us, then what happens? He's, he's just put back on the street? He could be detained for up to six months, and if they can't find another country willing to accept him, then he could be released. Not could be, he would have to be released. He would have to be released, and he would likely... Could be released into the population of the United States? Yes, with his child who is autistic, which that... Right now he's detained, right? He is detained, yes. And, but I would also note for the record that he did not have any, um, any convictions in the United States, and that is in the record, um, while here in the United States, because he left the... That we know of, but if, if BIA is correct, he's, like, not been honest throughout, so we actually don't know whether he has convictions under different names or different stories or whatever. We actually don't know the answer to that. All we know is he confessed to killing three people in El Salvador. I mean, we know that he confessed to killing three people in El Salvador and that the immigration judge found that he credibly testified before him that he was no longer a gang member. And your best argument is, on that point, is that the I.J. witness, he saw him as a witness, the meaner, on the witness stand, said, I believe him. And the BIA didn't. I think that it's really, and I apologize, I'm over the time, I think that it's important to note that the immigration judge not only saw him, but this is an immigration judge who has been a judge for seven years, previously served for 15 years at the Office of Principal Legal Advisor, 11 years as the chief counsel in that office. And he observed my client's demeanor, compared the applications, and this is a judge who routinely oversees detained cases. Do you think clear error takes into account the district, the immigration judge? I mean, it'd be a little odd for us to say as a court of appeals that, oh, we review this district court judge for clear error, but this is a really good district judge. Like, we really like this district court judge. And so clear error means more for this district judge than it does for a district judge that maybe, you know, I don't know as well. I mean, that would be an odd way to run a railroad. I mean, I agree with that, but I think that the reason I'm giving you the background information on him is because just as Ming Dai contemplates, the immigration judge is best suited to make the initial credibility findings. So knowing his background shows you how suited he is to make that initial credibility finding. This is a judge who routinely deals with persons in detention and understood why he didn't understand the initial application that was presented to the immigration judge because of the issues with representing detained individuals. Let's go back to Judge Keenan and see if she has anything else. Judge Richards and I got into it after she brought it up. Judge Keenan? Judge Keenan, did you have any other questions? No, thank you. I'm all done. You save some time. Okay. Thank you, Your Honor. Thank you. Ms. Groff? Thank you. Thank you, Your Honors. May it please the Court. Stephanie Groff for the Attorney General. Your Honors, this case truly comes down to our immigration system's own checks and balances, specifically as the Board is the highest administrative body for interpreting and applying immigration law and reviewing immigration judges' decision. As Judge King noted in the previous case, it's really about trying to get to the right answer, and that here is what the Board was doing. It reviewed the immigration judge's decision properly, noting that it reviewed for clear error the factual findings and ultimately determined that the immigration judge here made severe and unsubstantiated statements in its finding. I want to also point this Court to two decisions from the Board of Immigration Appeals that Mr. Colorado cited in his reply brief there, Matter of JGT and MAMZ. They specifically address how immigration courts handle the proposed expert testimony. In neither of those decisions does it state that an affidavit that's submitted by a proposed expert must automatically be taken by the adjudicator, the immigration judge, and be found to be an expert. In fact, Matter of JGT specifically goes into how a non-citizen or the Department of Homeland Security, as both can present witnesses, should propose an expert witness. It states that a resume may be filed, an affidavit should be filed, and if necessary, the opposing party, if the opposite party does oppose, has the opportunity to voir dire. With that in mind, here is what Ms. Blessinger noted today before this court then concedes that she made a tactical decision to not call Dr. Montgomery as her expert. The record... What do we do with this? It's a little ambiguous, but what do we do with the written declaration of Montgomery? Because the IJ doesn't, you know, explicitly incorporate it or adopt it. There's a strategic choice not to call them, and then we get to the BIA, and the BIA says, not exactly clear what this is, but if it's anything, we give it very little to no way. Can a witness statement, when the choice is made not to testify, could the IJ decide to consider that as the, you know, sort of informal proceedings that would permit that? Absolutely, and that is well supported in almost every circuit, but what specifically is missing here is Ms. Blessinger decided not to call Dr. Montgomery, and it would have been more prudent, again, not to question her choices, but to potentially prose a proffer, to say this is Dr. Montgomery would have testified exactly with what the affidavit said, leave it up to DHS then to say, you know, we agree with that, we're okay with that, but that's not what happened here. She declined to present the testimony. She made no statement with it. She didn't make a proffer? She did not make a proffer. She didn't vouch the record? No, Your Honor. But she put the declaration, and she calls it a declaration and the record, I think that's what it called. You said, you talked about affidavits. Affidavit and declaration. You say they're equivalent? They can, they're interchangeable when it comes to these proposed expert witnesses. Declarations are defined in this code, I think. Well, when it comes to immigration court proceedings, if an expert is going to testify, and a lot of times experts aren't presented to testify, they submit a declaration affidavit, and here the immigration judge had the opportunity and did consider it. Specifically, Ms. Blasinger noted in her opening brief that the immigration judge said that it took into consideration the expert declaration. What's important here, though, the board noted in making its clear error review when it comes to the CAT, the Convention Against Torture Protection, that the immigration judge, in rendering its finding, made no reference to Dr. Montgomery's testimony, or Dr. Montgomery's affidavit, sorry. And in doing that, the board found that on appeal, when Mr. Colorado filed his brief before the board, over-relied and stated that Dr. Montgomery says that there is a 100% chance that he will be killed and tortured if removed. The board found that, yes, while this is in the record, and the immigration judge had the ability to look at it, the immigration judge here did not rely on it. Instead, the immigration judge made unsupported, non-substantiated statements, and therefore the board determined that, in rendering its clear error review, it was not going to... So you're saying that the BIA considered it to be irrelevant? Not necessarily that it was irrelevant. What is it? The board found that, in looking at the totality of the evidence, that it was not going to give, it was not taking exactly what Dr. Montgomery said and giving it more weight to then the other record evidence. Here in its clear error review, which I will note this court reviews whether the board made the right decision under the substantial evidence standard, as Judge Richardson has mentioned before, the board here looked to the record evidence, looked to the immigration judge's decision, specifically when it comes to Kat, and found that his baseless statements were unsupported. The immigration judge is the adjudicator in these matters. The immigration judge has the duty to develop the record, but ultimately it's the respondent's burden of the non-citizen's burden for Kat protection. And here, the board decided that, in looking at the immigration judge's decision and factual findings, they were speculative. They were not based in the evidence. The board specifically looked at the evidence, did not make its own factual findings, and found that the clear error was clearly erroneous to make this finding. And bringing it back to Dr. Montgomery, the board found that because Ms. Blessinger made the tactical decision, she waived her opportunity, that it was not going to over-rely on that statement. I will also note that remand is not a... Yes, Your Honor. If I could ask you a question. One thing that interests me, maybe concerns me about the BIA is that it seems to be kind of a numbers game. In other words, it's throwing out how many people were detained versus how many people were in prison versus how many people who died in detention. And is that a valid analysis for BIA in reviewing a record? They seem to be resting on numbers analysis. Could you respond? Yes, Your Honor. The government agrees that there is a lot of numbers, and while that's not my forte, the government argues that the board's decision here is proper. And it goes back to their applying the substantial evidence or, sorry, the clear error standard of review. For clear error, it is whether if there are two permissible views of the evidence, then it could not be clear error. The board's decision, and in noting numbers, looked to what the immigration judge found, and held that the immigration judge's statements were unsupported, they were speculative, and therefore it was not a permissible view of the evidence. And in rendering that conclusion, the board then looks at the totality of the evidence, which, as an administrative review court, has the ability to do to look at the totality, and pointed that the immigration judge's findings were unsupported. When it came to numbers specifically, as it relates to the likelihood of harm, the immigration judge stated that hundreds of people have been reportedly killed and tortured. The board took that and stated that this is unsupported. And looking at the immigration judge's decision, his cite to the record did not specifically support what he stated. And then the board looked to the record evidence, noted that, yes, the state of exception is happening, there have been about 84 people that have been killed in these operations to arrest people. There is also evidence that a certain amount of people have died in detention, but the board found, based on the record evidence, those that have died in detention, even fewer show signs of torture. And that's what's really important here. Specifically, Mr. Colorado has the burden to prove that it is more likely than not that he will be tortured if removed. And being arrested is not just torture, and being in poor country conditions, while the government obviously does not meet his burden. And so the board here did not render its own factual findings. It is in the regulations that the board can look at the most recent country conditions report to take administrative notice. And in doing that, held that the immigration judge here clearly erred. Now, where this court comes into play is whether that is supported by substantial evidence. And Mr. Colorado has failed to point to evidence in the record that compels a contrary conclusion. Even the evidence that Ms. Blessinger noted before this court does not compel a contrary conclusion. In addition to whether there's a likelihood of harm, Mr. Colorado also needs to point to the fact that it is with the specific intent to cause this harm. And while there is evidence that government officials in El Salvador have noted that they want to control gangs and that there may be issues as it relates to this, that does not meet the high burden that there is a specific intent to torture, to harm them. And it's the government that is doing that. The record evidence also shows that for years, 30, 40 years, El Salvador has been ridden with gang violence. The state of exception is a constitutional authority that was invoked by President Bukele to control the country. Okay, now, Ms. Brock, one thing I'd like to ask you about, you said they have to show a specific intent to torture? Yes, Your Honor. I don't see that anywhere. Don't they have to show or does any petitioner have to show that it's more likely than not that torture would occur? I mean, torture could occur because of lack of strength, because of ignorance, all sorts of things, without a specific intent to torture. Seems to me that you're adding something on there. Sure, Your Honor, and let me just clarify. The specific intent language comes from the definition of torture itself. Specifically, a act, it constitutes torture if it's specifically intended to inflict severe pain or mental suffering, and that is in the regulations at 8 CFR 1208.1885. This court also, in Oxygena v. Lynch, noted a specific intent to torture. Additionally, there's the board's decision a matter of J.R.G. Is there anything that says there has to be proof of a specific intent? Generally, specific intent is something that exists before the act. Is it not? In other words, I have to intend to do something and then I carry out that intent. And it seems to me that you're elevating the requirement here by requiring a precondition for torture that somebody could actually intend to do it. They have to prove a prior intent before the act occurs. And, Your Honor, I do not mean to create a new standard or show that that has to be proven. However, with Convention Against Torture Protection, the ultimate question is whether it's more likely than not that he would be tortured. As noted previously, that's more than 51%. In that more likely than not, that includes the definition of torture, so the board here properly noted that Mr. Colorado did not demonstrate more likely than not that he would be tortured, and in that, did not demonstrate the specific intent element that the Salvadoran government here is intending for this harm. And the board in making that finding noted that the immigration judge made a comment that, oh, it could show possibility that the government is wanting to torture. But the board looked at the record evidence, which it has the ability to do, and noted that there is evidence that the government is seeking more funding for more prisons, is stopping the overcrowding, and making efforts to make it more reasonable. In fact, and cited to the board's decision in JRGP, which showed that these efforts and underfunding and efforts to make conditions better does not show that specific intent element. And notably, the record here does not compel a contrary conclusion to that of the board. And I do want to go to the credibility finding here. As Ms. Flesinger noted, a non-citizen can receive cat protection, even if they are not credible. But here, substantial evidence more than supports the board's finding that the immigration judge's decision was clearly erroneous. Specifically... She found incredible found incredible and said that he apparently misrepresented or lied on two previous applications. Correct? Yes, Your Honor. And then the Board of Appeals said that was an erroneous ruling, so he confessed to three murders and the judge found him  And when he denied the murders, so he was apparently he said he was lying. So you all the BIA said it was not credible when he confessed. Right? So you don't admit that he's a murderer. No, Your Honor. Let me just clarify. Well, the judge said he's credible and part of it was that he confessed to crimes on the witness stand. Well, the board's decision is that... That went to his credibility and the judge analyzed it and saw him and said, I believe him. And the BIA then says, well, we overruled that. And in doing so... So that means he didn't commit the crimes. At least he wasn't credible. The testimony wasn't credible enough to mean that he committed the crimes. Well, Your Honor, that's a catch-22 and not what the board was holding here. Specifically, the board... Well, it is what they held. They held that the credibility ruling was wrong. It was clearly erroneous. That's wrong. Clearly erroneous is wrong. The credibility ruling was wrong. It was clearly erroneous. So... He didn't believe for the purposes of the BIA ruling he didn't commit any crimes. He didn't commit any murders. He might have committed some crimes. I don't know. I haven't looked at the detail of it. But he didn't commit the murders for sure based on the BIA ruling. The government respectfully disagrees. In fact, the board's decision shows that it's... Well, then you're picking and choosing. You're saying... No, the board isn't sure... The credibility ruling still permits you to cherry-pick. The board did not cherry-pick here, and the government is not cherry-picking. When the board found that the judge's decision was clearly erroneous, it was not stating that everything that he agreed to and stated was true is now false. In fact, the board and this record... It doesn't have to go that far, right? Because there are, like, arrest warrants. There are arrest warrants. For the BIA's purpose, it doesn't have to rely on his admission. There's other evidence in the record that he killed these three people. Absolutely. There's not only... So whether you just wipe his testimony out altogether, that would not mean he didn't commit the murders. It would mean maybe he didn't confess credibly to committing the murders. But there's sufficient evidence, substantial evidence indeed, in the record, that he committed the murders independent of his own admissions. Absolutely, Your Honor. And the board... So we can disregard the credibility ruling and still rule in your favor. Absolutely. And in fact... Well, that's sort of why I'm getting at it. You're arguing about all this credibility stuff. Well, I was just referencing... But you don't need it. Yes. And I can happily move on. But as to Judge Richardson's point, it is whether or not he was credible or not. There are multiple Salvadoran arrest warrants for his murder. Also, Mr. Colorado submitted his own arrest warrants in the United States, which noted that he is on an FBI watch list for MS-13. And your opponent there says that if he gets deferral of removal, he'd have to be released on the street. Could the United States... So let me... I'm happy to clarify that. So deferral of removal specifically is intended for, may I say, the worst non-citizens, specifically those who have been convicted and sentenced in Guantanamo Bay, as it is to terrorism attacks. The Convention Against Torture deferral still protects them. But in order... If a deferral of removal is granted, say if it were to be sent back to the judge, what happens is that the Department of Homeland Security has the ability to work with other countries, to work with some of our territories... But nobody will take it. Nobody would take it. Well, Your Honor, that is beyond the scope of what we have here. There is numerous instances where certain countries, for instance, Palau has taken terrorists that have come from Guantanamo Bay. We don't know that here, and that's beyond the scope of what we have here. What we have here is a well-reasoned board decision that found clear error in the immigration judge's speculative and jumping to conclusions decisions, and the record does not compel a contrary conclusion, even ignoring the credibility finding that Mr. Colorado has met his high burden of proof that it's more likely than not that he would be tortured. Just to make sure I understand your point about the deferral, I understand that you're positing that the government could convince some other country to take this petitioner, but do you agree, if not, that he would then have to be released? If not, yes. He would have to be released. There is no detention that can be longer than, as my friend on the other side said, for six months he would be released into society. I believe he currently lives in Northern Virginia. Ones who get Convention Against Torture deferral are not eligible for certain benefits, I will note, but it is still a protection that they are not allowed to be removed to their home country. But here, what we have is a non-citizen who, either admitted or not, is going to be arrested, no one can test that, if removed to El Salvador, and he is not proven that it's more likely than not that he would be tortured if removed. It's his burden, he did not prove that, he did not proffer the witness, and the board properly noted that even if Dr. Montgomery were to testify, it is not necessary here, and remand wasn't necessary. And I will just make one more point on Dr. Montgomery's statement, and I said this in my answering brief, even assuming that it was an error for the board not to remand, as the dissent noted, and the board, Mr. Colorado has not proven that anything in Dr. Montgomery's affidavit or declaration would change the result of the case. Dr. Montgomery made a statement that it's 100% chance that he will be tortured, but it does not address the state of exception as it relates specifically to Mr. Colorado, it also does not address country conditions as it relates to overcrowding, and how it will directly affect Mr. Colorado, and therefore we'd ask this court to uphold the board's reversal of the immigration judge's decision and deny the petition for review. Thank you very much, Ms. Ralph. Thank you. Ms. Blesinger. Thank you. May I proceed? Go right ahead. Your Honor, I think it's important to note here that my colleague stated that Dr. Montgomery's testimony was not needed, absent it would not cause any prejudice to my client. However, the Board of Immigration Appeals specifically referenced the 2022 Human Rights Report in its decision, that Dr. Montgomery did not have an opportunity to opine on, and actually does also support my client's likelihood of being tortured in El Salvador. But Dr. Montgomery's testimony would be relevant specifically to that report, Your Honor. I'm sorry, say that one more time. So your argument that her, Dr. Montgomery, that her testimony would help because Dr. Montgomery would have testified to things that were not in her written declaration. I mean, she would testify. The premise of that point is that Dr. Montgomery would not have limited herself to her written declaration, but instead would opine on other things that would have been pertinent. And in your view, that's permitted in the immigration system that you can give an expert disclosure, but the expert is not, as they would be in federal court, they're not bound to testify only to things included in the disclosure. They can testify about anything they want to. That's correct. The affidavit is more of a similar to, it's akin to a proffer, almost, a written proffer. So I do think that's relevant. The other is, Your Honors had asked what would happen if my client were to be released. I also do want to note that in addition, he would have to report annually to immigration and each time at that annual reporting would likely need to provide proof of his attempts to find a safe third country to take him. With regard to the funding for prisons, I encourage this court to look at each citation that the board made in its decision. Each and every citation shows that the funding for the new prisons is only to allow the Salvadoran government additional room to torture these individuals rather than actually help their conditions. With regard to my colleague's statement that the immigration judge has the duty to develop the record, we wholeheartedly agree with that and that's why this case should not have just been reversed once the board found that my client did not call Dr. Montgomery as a witness. My client never waived the right to call Dr. Montgomery as a witness. It's just that the judge in following his duty to develop the record found that we didn't need to present her evidence. We didn't need her oral testimony to grant deferral. You don't like that word waiver. I mean, we never waived the right to call her, so yes, I don't like that word because it mischaracterizes what happened. As my colleague noted, Is there ever a strategic decision in your view that would constitute waiver? Or strategic decisions just don't matter. So your choice to call or not call witnesses or include or not include them on the witness list, if you get to the BIA and the BIA disagrees, you can say well, we have these five people. They were on the witness list. We didn't call them, but we didn't waive the right to call them, so we should get to call them now. Is there ever a point in which strategic decisions matter? Or is your view like you can make strategic decisions, but just sandbag it up? So you get to the BIA and you say, well, you know, yep, I chose not to call these seven people, but now that I lost, I want to go back and have another crack at it. That's a completely different scenario because in this case, we listed... Would you agree that the waiver would apply there? I think so, yes, Your Honor. I would agree in that circumstance if they're not on the witness list. So it's not that you can't waive things, you just think your strategic choice here doesn't amount to it? Correct, because we... Can you help me understand where the line, how you draw that line? Sure. On the administrative record, page 241 and 242, you'll note that we stated we wanted to call Dr. Montgomery as a witness. Then the judge went off the record and said you've won the case without using Dr. Montgomery's testimony. Then we went back on the record, he summarized that and asked if we wanted to rest on that evidence. I mean, that's completely... You made a choice to say yes, right? Because the immigration judge said they were satisfied. I mean, that's the immigration judge's... He was satisfied we met the burden. So your line is that any time the court tells you you're likely to win, your strategic decision is no longer a waiver. So it turns on whether the immigration judge forecasts the ruling before you make your decision. And then it's not a waiver because it's involuntary? Why is it not a waiver? Is the line that it's no longer voluntary? I think it's not a waiver because the immigration judge finds that you've met the burden. I mean, the immigration judge in this case said if we were to rest on this record, you've met your burden. And I think that's the distinction here. And so... And the risk is going to get reversed. Any time a judge rules, the other side can appeal it. Right. But then the other... There's a risk for you to say we're not going to follow it. But I think what's relevant is what the adjudicator wants in that case. And the adjudicator found that we had met the burden on the record before it. And I just want to point one thing, if I may. I know I'm over time, but just if I may point the court to Judicial Record... I'm sorry. Administrative Record 1379. It does show that the unlawful killings of suspected gang members and others are being made by the Salvadoran security forces. And so I think that's also relevant to showing that Judge Choi's decision was well reasoned and that the board, while they called it clear error, did not follow that standard. And the dissent notes that as well. Thank you. Thank you very much, Ms. Blesinger. We appreciate your work. Thank you very much. Judge Richardson, I'll come down and greet counsel. Did I need to check to see if Judge Keenan had anything? Pardon? Just because Judge Keenan is on the screen, I didn't know if I needed to check. Oh, I'm sorry. Judge Keenan, do you have a question? I wanted to say thank you. Thank you, Your Honor. Judge Richardson, I'll come down and greet counsel. We'll adjourn court for the day and then the court will reconvene for the conference.  This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan